UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN WATERCASTER,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:24-cv-00127 SCR<br><br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401-34. Because the ALJ erred in discounting plaintiff's subjective migraine symptom testimony, plaintiff's motion for summary judgment will be granted and the Commissioner's cross-motion for summary judgment will be denied.

## BACKGROUND

**I.   Procedural Background**

Plaintiff applied for DIB benefits on April 27, 2021, alleging disability beginning April 1, 2020. (Administrative Record ("AR") 17.)[1] The claim was denied initially on October 15, 2021,

---

[1] The AR is electrically filed at ECF No. 11-11. AR page references are to the number in the lower righthand corner of the page, not the CM/ECF generated header. References to briefs are to the page number generated on the CM/ECF header.

and upon reconsideration on February 3, 2022. (Id.) Plaintiff's request for hearing was received on March 31, 2022. (Id.) On April 25, 2023, administrative law judge ("ALJ") Matilda Surh presided over an online video hearing. Plaintiff participated in the hearing and was represented by counsel. Lawrence Haney, an impartial vocational expert, also testified. (See AR 36-56.)

On July 11, 2023, the ALJ issued an unfavorable decision, finding plaintiff not disabled under Sections 216(i) and 223(d) of the Act, 42 U.S.C. § 1382c(a)(3)(A). (AR 14-34.) On December 6, 2023, the Appeals Counsel denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (AR 2-6.)

## II.    Factual Background

Plaintiff was born in 1982 and 38 years old at the time she filed her application. (AR 220.) Plaintiff has an associate's degree and past work experience as a call center representative for several different businesses. (AR 254.) At the end of March 2021, plaintiff was placed on short term disability leave from her position as a call center representative for a bank due to her conditions. Her employer officially terminated her employment in April 2021 due to her need for an extended leave. Plaintiff was ineligible for federal leave protection. (AR 263.)

At the administrative hearing on April 25, 2023, plaintiff testified she is no longer able to sit or stand for extended periods of time because of pain to her hips, knees, feet, lower legs, shoulder, arms, hands, and neck, and migraines. (AR 42-44.) She testified that she is on daily maintenance medications for migraines and has rescue medications on hand. (AR 44.) Plaintiff also receives monthly nerve blocks and in-home injections for migraines and has had physical therapy for her shoulders. (AR 44-45.) Plaintiff testified that she lives with her spouse, who is the sole supporter of the household and does all the chores and physical tasks around the home. (AR 40, 45-46.) Plaintiff stated her migraines affect her vision, and that she no longer drives for safety reasons. (AR 48-49.) She also testified that she needs to lay down or rest for roughly 60% of the day and uses a cane when she is out of the home to maintain her balance. (AR 50-51.)

**STANDARD OF REVIEW**

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards."

Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in the decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Commissioner, 454 F.3d 1050, 1055 (9th Cir. 2006)).

**RELEVANT LEGAL STANDARDS**

**I.   Five-Step Sequential Evaluation Process**

A claimant is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §1382c(a)(3)(A); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).

The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make her capable of performing her past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are

blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see also Bowen, 482 U.S. at 146 n.5.

## II. Credibility of Subjective Pain or Symptom Testimony

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (internal citations and quotation marks omitted). The claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. at 1036 (quoting Smolen v Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Id.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter, 504 F.3d at 1036 (quoting Smolen, 80 F.3d at 1282). The Ninth Circuit has described the finding required as follows:

> [A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination. To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.

Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (citation omitted).

////

////

# THE ALJ'S DECISION

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023. (AR 19.)

2. [Step 1] The claimant has not engaged in substantial gainful activity since April 1, 2020, the alleged onset date. (AR 19.)

3. [Step 2] The claimant has the following severe impairments: obesity, diabetes mellitus, neuropathy, mild cervical and thoracolumbar degenerative disc disease, osteoarthritis, migraines, and adhesive capsulitis. (AR 20.)

4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 22.)

5. [Preparation for Step 4] After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to frequent pushing/pulling with the bilateral upper extremities; occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; and alternating between sitting and standing every 15 minutes. (AR 23-28.)

6. [Step 4] The claimant is capable of performing past relevant work as a benefits clerk II, order clerk, information clerk, and call out operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. (AR 28.)

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2020, through the date of this decision. (AR 28-29.)

# DISCUSSION

Defendant neither disputes that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, nor asserts any evidence of malingering. (ECF No. 17 at 4.) Therefore, the court's analysis turns solely on Step 2 of the credibility analysis, i.e., whether the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony about the severity of her symptoms.

The ALJ summarized plaintiff's relevant symptom testimony as follows:

[Claimant] reported difficulties in lifting, standing, walking sitting, reaching,

6

postural movements, and using her hands. She reported she could lift 20 pounds but only for 2-3 minutes. She reported she could walk no more than 50 feet before needing rest and pay attention for merely 20-40 minutes at one time. She reported she would need help to get back up if she squatted all the way down. She reported she uses a cane.  She testified she cannot sit or stand for long periods of time due to constant pain. She endorsed chronic pain in her lower back, hips, knees, feet, arms, shoulders, hands, and neck. She endorsed having chronic migraines and is currently taking medication and receiving injections. She also testified to having frozen shoulder and neuropathy in the feet. She stated her spouse does all chores around the house, except for paying bills and making phone calls. She stated she could stand for merely two minutes and three if she pushes herself. She indicated she could sit for a about five minutes before she needs to change positions. She stated her daily migraines change in severity.

(AR 24 (internal citations to exhibits omitted).)  The ALJ summarized her reasons for discounting this testimony as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments [i.e., obesity, diabetes mellitus, neuropathy, mild cervical and thoracolumbar degenerative disc disease, osteoarthritis, migraines, and adhesive capsulitis] could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 24.)  The ALJ then explained her reasoning for roughly four pages.  (AR 24-28.)

Plaintiff argues three parts of the ALJ's explanation did not meet the "clear and convincing" standard: (1) that the objective medical evidence did not support plaintiff's testimony; (2) that plaintiff did not have emergent treatment and has been treated conservatively; and (3) that plaintiff was capable of performing activities of daily living without difficulties. (ECF No. 12 at 9-14.)  The undersigned addresses each argument in turn.

    **I.**    **Consideration of Objective Medical Evidence**

        **A.  Whether Medical Evidence was ALJ's Sole Consideration**

Plaintiff first argues that the ALJ erred in rejecting her testimony <u>solely</u> based on the objective medical evidence. (ECF No. 12 at 10 ("[The objective medical evidence] alone can never serve as a clear and convincing reason to dismiss a claimant's testimony.").)  Defendant argues the ALJ properly considered the consistency of plaintiff's subjective symptom testimony against the objective medical evidence and other treatment evidence.  (ECF No. 17 at 4-5.)

////

Plaintiff is correct that once a claimant produces objective medical evidence of an underlying impairment, the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir.1991) (en banc)). However, "the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." Id. (citing 20 C.F.R. § 404.1529(c)(2)). The ALJ must ultimately determine whether a claimant's "alleged functional limitations and restrictions due to symptoms … can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4) (emphasis added).

Here, the ALJ allocated much of the decision to inconsistencies between plaintiff's alleged symptoms and the objective medical evidence. For example, she discussed at length the discrepancies between plaintiff's orthopedic symptoms and the "mild-to-moderate" imaging findings. (See AR 24-25, 27.) But the ALJ also considered evidence from other medical and nonmedical sources. To name a few, the ALJ cited plaintiff's "notable improvement" in shoulder mobility from physical therapy treatment (AR 25) and plaintiff's own reports of performing her daily activities "without difficulties" (AR 28). This other evidence was relevant to plaintiff's symptoms and properly considered by the ALJ. See 20 C.F.R. § 404.1529(c)(3) (describing other factors besides objective medical evidence that ALJs must consider in determining the intensity and persistence of symptoms). Thus, the undersigned finds that the ALJ did not dismiss plaintiff's symptom testimony solely based on the objective medical evidence.

**B. Consistency of Medical Evidence and Symptom Testimony**

Next, plaintiff challenges the ALJ's finding that the objective medical evidence did not substantiate plaintiff's pain and symptoms. Plaintiff maintains there is "significant medical documentation" regarding each of her alleged symptoms. (ECF No. 12 at 10-11.) Defendant argues that the ALJ determined the objective medical evidence supported some of plaintiff's allegations, but that the weight of the evidence did not support the existence of work-preclusive disabilities as plaintiff alleged. (ECF No. 17 at 5.)

////

"When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). Here, the ALJ's finding of inconsistency between plaintiff's testimony and the objective medical evidence is supported by substantial evidence. Regarding plaintiff's orthopedic symptoms, imaging confirmed "merely mild cervical degenerative changes and generalized degenerative changes in the thoracolumbar spine." (AR 24.) Neurological exams between 2021 and 2023 "routinely confirm[ed] intact coordination, normal gait testing, full motor strength, intact sensation, and intact reflexes." (Id.) Knee/hip x-rays taken in September 2021 confirmed "very subtle" mild right-side medical joint space narrowing but otherwise looked "quite reasonable" without any signification degeneration. (AR 25.) The ALJ also found that the medical evidence, including a "normal" monofilament test in April 2021, was inconsistent with plaintiff's diabetic neuropathy symptoms. (Id.) Finally, as to plaintiff's migraines, the ALJ cited "extensive diagnostic studies" (i.e., EEG, CT of the brain, MRI of the head, and CTA of the head and neck) that were "entirely normal." (AR 26.)

There is some diagnostic support for plaintiff's symptoms. For instance, the ALJ cited Dr. Walthour's December 2022 finding of "moderately reduced motion" in plaintiff's shoulders and diagnosis of adhesive capsulitis. (AR 25.) But the sufficient weight of evidence ultimately supports the ALJ's finding that the objective medical evidence did not substantiate plaintiff's subjective symptom testimony. Accordingly, the undersigned finds that the ALJ did not err in dismissing plaintiff's testimony as unsupported by the objective medical evidence.

## II.     Plaintiff's Treatment History

A claimant's treatment history is a valid consideration in evaluating symptom testimony. See 20 C.F.R. § 404.1529(c)(3). Here, in finding plaintiff was "more capable than alleged," the ALJ explained that "the record does not reflect any emergent treatment for chronic pain, migraines, or diabetic complications . . . . and the claimant has been conservatively managed with medications and physical therapy . . . ." (AR 27.) Plaintiff asserts these findings are inaccurate. (ECF No. 12 at 11.) Defendant maintains the ALJ properly determined plaintiff's conditions were conservatively managed with medications and physical therapy, and that this successful

9

treatment history undermined her allegations of work-preclusive disability.  (ECF No. 17 at 6-7.)

**A.  Conservative Treatment of Orthopedic and Diabetic Neuropathy Symptoms**

First, plaintiff disputes findings that she was treated conservatively for her impairments.[2] (ECF No. 12 at 11-12.)  The ALJ made findings that plaintiff's orthopedic impairments (osteoarthritis, spine conditions, shoulder pain) were conservatively treated with Naprosyn, Flexeril, Cymbalta, Tylenol, Neurontin, and Lidoderm, as well as physical therapy.  (AR 25.)  Regarding plaintiff's diabetic neuropathy, the ALJ found plaintiff was "medically managed" with Metformin, Glucophage, Jardiance, and/or Neurontin.  (Id.)  The ALJ also noted that by January 2023, plaintiff had been more accountable with blood sugar and diet management.  (Id.)

"[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."  Smartt, 53 F.4th at 500 (citing Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)).  Physical therapy is generally considered conservative treatment.  See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (claimant who responded favorably to conservative treatment including physical therapy, anti-inflammatory medication, and transcutaneous electrical nerve stimulation was not suffering from disabling pain).

Here, plaintiff had mixed success with physical therapy.  Therapy for her shoulders in 2022 resulted in "significant improvement" in her ranges of motion.  (AR 25.)  On the other hand, plaintiff was referred to an orthopedist for knee pain in July 2021 after limited improvement with physical therapy.  (AR 24.)  The ALJ ultimately found the 2021 physical therapy findings unpersuasive (id.), and the therapy notes from that period do indicate plaintiff reported some decreased symptoms.  (See, e.g., AR 676, 679-80, 682.)  Thus, the ALJ's findings that plaintiff was treated conservatively with physical therapy are supported by the record.

Turning to pain medications, the Ninth Circuit has characterized "over-the-counter pain medication" as "conservative treatment" sufficient to discount a claimant's testimony regarding the severity of an impairment.  Parra, 481 F.3d at 751 (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  "Courts have reached varying conclusions, based on the longitudinal

---

[2] Plaintiff claims the ALJ also characterized her migraine treatments as "conservative."  (See ECF No. 12 at 11-12.)  This question is addressed in the next section below.

records of each particular case," as to whether treatment with prescription drugs may be considered "conservative." Keener v. Comm'r of Soc. Sec., No. 1:22-CV-1061 SAB, 2023 WL 4424671, at *14 (E.D. Cal. July 10, 2023) (collecting cases).

Here, the ALJ determined plaintiff's orthopedic impairments have been treated conservatively with pain medication "since 2021." (AR 25.) The ALJ did not elaborate but cited two exhibits: (1) a July 2021 provider progress note reflecting that plaintiff was "managing" her osteoarthritis symptoms with "ibuprofen 200-400 mg" and beginning Cymbalta 30 mg (AR 1556); and (2) a March 2023 list of plaintiff's myriad prescription medications, including Naprosyn, Flexeril, Cymbalta (40 mg), Tylenol, Neurontin, and Lidoderm (AR 1596-1598).

Although the analysis lacks detail, the two exhibits provide enough support for the ALJ's characterization of the treatments as conversative, particularly in the consistency of treatments over time and the absence of stronger pain medications.[3] See Lee Jones v. Comm'r of Soc. Sec., No. 1:20-CV-1488 EPG, 2022 WL 1597802, at *13 (E.D. Cal. May 19, 2022) (ALJ's citation to hospital records was "specific enough" to allow for meaningful review of conservative treatment finding); Hesketh v. Berryhill, No. 1:15-CV-2396 SB, 2017 WL 2256964, at *6 (D. Or. May 23, 2017) (collecting cases finding Cymbalta and Neurontin constituted conservative treatment).

The ALJ's citations similarly support the finding that plaintiff was "medically managed" on Metformin, Glucophage, Jardiance, Neurontin. The records show plaintiff's medications remained consistent between 2020 and 2023, even as her HgA1c remained elevated. (See AR 653-54, 1575-76, 1597-98.) By January 2023, plaintiff's endocrinologist noted that plaintiff's HgA1c improved as she became more accountable with respect to blood sugar and diet management. (AR 25.) In sum, there is support in the record for the ALJ's finding that plaintiff's orthopedic and diabetic neuropathy symptoms were treated conservatively. Accordingly, the ALJ did not err in discounting plaintiff's testimony on these bases.

---

[3] To refute the finding of conservative treatment, plaintiff directs the court to single record (AR 772) reflecting a prescription for "NORCO 10," which, according to the record, is a combination of acetaminophen and hydrocodone. (ECF No. 12 at 12.) The record is dated November 20, 2020, outside of the period of treatment the ALJ characterized as conservative. The fact that this prescription did not continue through the period of 2021-2023 further supports the ALJ's finding.

11

**B. Type and Effectiveness of Migraine Treatments**

The "type, dosage, [and] effectiveness" of medication taken to alleviate a claimant's pain or other symptoms is a proper consideration when elevating their subjective symptom testimony. 20 C.F.R. § 404.1529(c)(3)(iv). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) (citations omitted); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for SSI benefits").

Here, the ALJ dismissed plaintiff's migraine symptom testimony based, in part, on symptom improvement with treatment. The ALJ found that in 2021, plaintiff reported a baseline of 6-7 migraines per day lasting 15-to-60 minutes in duration and mostly at night. (AR 26.) In August 2022, she reported "chronic daily headaches" and was diagnosed with cervico-cranial syndrome with cervicogenic headache and chronic migraine. She was initially prescribed Topamax without much relief, but Tylenol was partially effective. (Id.) Plaintiff underwent occipital nerve block injections in November 2022, January 2023, and March 2023. (Id.) Plaintiff was then placed on a trial of Ajovy injections later in March 2023. (AR 26, 1619.)

The ALJ concluded that the effectiveness of the treatments ultimately undermined plaintiff's symptom testimony:

> [I]n considering the claimant's migraines, the claimant has received significant treatment for persistent migraines, including injections. However, she reported having 4-5 monthly migraines post-treatment that lasted only 2-3 hours in duration, which she rated only 5-6/10 in intensity. . . . No medical sources have observed the claimant being in distress due a migraine, and the claimant has not sought any emergent treatment for intractable migraines.

(AR 27.) For the reasons set forth below, the undersigned finds the ALJ's conclusory finding of treatment success was reversible error.

First, plaintiff argues the ALJ understated her post-treatment symptoms. Specifically, the ALJ omitted evidence from the same medical record showing that, in addition to 4-5 migraines per month, plaintiff reported chronic headaches 2-3 days a week lasting 2-3 hours with an intensity of 5-6/10. (ECF No. 12 at 11-12 (citing AR 1619).) The undersigned agrees that the

1 ALJ's description of her post-treatment treatment symptoms masks the full picture presented in the record and calls into question the evidentiary basis of the finding of improvement.

Second, the ALJ did not explain why post-treatment migraines of this frequency and duration are inconsistent with plaintiff's symptom testimony. See Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"). Stated differently, the ALJ did not provide clear and convincing reasons for concluding the treatments were effective. See Jones v. O'Malley, No. 23-16136, 2024 WL 3963835, at *1 (9th Cir. Aug. 28, 2024) (reversing denial of DIB benefits and remanding where the ALJ "made no findings about the efficacy" of plaintiff's psoriatic arthritis and back pain treatments); Holohan, 246 F.3d at 1205 ("some improvement does not mean that the person's impairment no longer seriously affects [her] ability to function in a workplace.").

Third, to the extent the ALJ determined plaintiff's migraine symptoms improved with merely conservative treatment, this was error.[4] See Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010) (doubting that claimant's treatments, including "occipital nerve blocks and trigger point injections" were conservative); Garrison, 759 F.3d at 1015 n.20 (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Tagle v. Astrue, No. CV-11-7093 SP, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not.") (citations omitted). Even if the ALJ did not consider the migraine treatments to be conservative, she did not explain why plaintiff's receipt of increasingly aggressive medicines was inconsistent with her symptom testimony. "Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works … generally lend support to an

---

[4] It is not clear whether the ALJ determined the treatments were conservative. On the one hand, the ALJ characterized the migraine treatments as "significant." (AR 27.) But in summarizing her decision to discount plaintiff's symptom testimony, the ALJ concluded that plaintiff had only been "conservatively managed with medications[.]" (Id.) Both parties proceed as if the ALJ determined the treatments were conservative. (See ECF No. 12 at 11-12; ECF No. 17 at 6-7.) The undersigned finds it ambiguous at best and will entertain both possibilities.

individual's allegations of intense and persistent symptoms." Social Security Regulation 96-7P, 1996 WL 374186 at *7. Therefore, under either interpretation of plaintiff's migraine treatments, the ALJ's explanation does not meet the clear and convincing standard.

Lastly, the ALJ's other treatment-related reasons for discounting plaintiff's testimony – that "[n]o medical sources have observed the claimant being in distress due to a migraine, and the claimant has not sought any emergency treatment for intractable migraines" (AR 27) – appear to be inaccurate. The record reflects plaintiff went to an emergency room on September 23, 2021, presenting with difficulties thinking and forming words, slurred speech, and left upper arm pain with overlying numbness, all associated with a headache. (AR 1388, 1620, 1948-49.) It is unclear whether the ALJ missed this evidence or purposely omitted it as unpersuasive, etc. Regardless, courts "cannot speculate as to the grounds for the ALJ's conclusions." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014).

The undersigned cannot find these errors harmless on the present record. See Stout, 454 F.3d at 1056 (the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination"). Accordingly, the ALJ committed reversible error in failing to provide clear and convincing reasons, supported by the evidence, for discounting plaintiff's subjective symptom testimony based on type and effectiveness of her migraine treatments.

### III.     Activities of Daily Living

Finally, an ALJ must consider a claimant's daily activities. 20 C.F.R. § 404.1529(c)(3)(i). An ALJ may discount a claimant's subjective symptom testimony when the limitations described are inconsistent with the daily activities. See Ahearn v. Saul, 988 F.3d 1111, 1117 (9th Cir. 2021) (finding claimant's daily activities of playing video games, watching TV, using library computer, using public transport, shopping, preparing meals, and socializing constituted substantial evidence to support the ALJ's decision). "Even if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.'" Smartt, 53 F.4th at 499.

////

Here, the ALJ discounted plaintiff's ADL testimony for two reasons: (1) That in 2022 and 2023, she routinely reported to her neurologist that she could perform her activities of daily living without difficulties; and (2) she reported living in a two-story home with 20 stairs to reach her bedroom or bathroom. (AR 28.) Plaintiff maintains her ability to complete certain minimal tasks in her own home is not inconsistent with her testimony that she could not sustain full-time work on a consistent basis. (ECF No. 12 at 13.) Defendant counters that the ALJ reasonably found plaintiff's admitted activities were inconsistent with her alleged symptoms. (ECF No. 17 at 8.)

The Ninth Circuit has warned that "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Here, however, the ALJ reasonably determined that plaintiff's unequivocal reports to her neurologist (e.g., "Patient can do any [of] the ADLs without difficulties," AR 1620) were inconsistent with her pain testimony. Plaintiff points to evidence in the record that she maintains prove significant difficulties with daily activities. (See, e.g., AR 387 (noting plaintiff's "hard time" driving due to pain).) But "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Thomas, 278 F.3d at 954. Thus, the ALJ did not err in discounting plaintiff's pain testimony based on her daily activities.

## CONCLUSION

When a court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings." Leon v. Berryhill, 880 F.3d 1041, 1045 (9th Cir. 2017); see also Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"). That is what the undersigned will do here.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is GRANTED;
2. Defendant's motion for summary judgment (ECF No. 17) is DENIED; and

////

3. The case REMANDED to the Commissioner for further proceedings on Plaintiff's disability claims consistent with this order. The Clerk of the Court shall enter judgment in favor of Plaintiff and close the case.

DATED: August 27, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE